UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM HARDY** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-3189** |
| **SHELL CHEMICAL COMPANY AND SHELL CHEMICAL LP** | **SECTION I** |

## ORDER

The defendant, Shell Chemical LP ("Shell"),[1] has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] The plaintiff, William Hardy ("Hardy"), has filed an opposition.[3] For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART.**

### *BACKGROUND*

From 1989 through April 3, 2008, plaintiff was employed as an engineer for Shell Oil Company.[4] Hardy alleges that Shell began to discriminate against him on the basis of his age in 2004, when he turned 55.[5] Hardy claims that he was treated less favorably than younger, similarly situated employees.[6] In his complaint, Hardy contends that he was denied promotion

---

[1] The plaintiff's claims against Shell Oil Company were dismissed, upon joint stipulation by the parties, on October 20, 2009. *See* R. Doc. No. 17.

[2] R. Doc. No. 30.

[3] R. Doc. No. 32.

[4] R. Doc. No. 4, pp. 1-2.

[5] *Id.* at p. 2.

[6] R. Doc. No. 32, pp. 6-10.

opportunities, overlooked for job-related training, and that he received reduced compensation relative to younger employees.[7] Hardy avers that, in contrast to younger employees of his same grade, he was assigned to report to a lower level of management, moved to a smaller office, and transferred to five separate managers in three years.[8] According to Hardy, he "was assigned work tasks that were not outlined in his job description and penalized for not meeting unrealistic deadlines."[9]

Hardy contends that on April 3, 2007, he submitted a written complaint to his manager, Suzanne Karst ("Karst"), complaining that he was constantly compared to younger employees and subjected to harassment and a hostile work environment.[10] Hardy states that Karst referred this complaint to Shell's human resources department.[11]

On February 8, 2008, Hardy filed a charge of discrimination with the Louisiana Commission on Human Rights on the grounds of age discrimination and retaliation.[12] On February 26, 2008, in a written response to his job performance review, Hardy complained of age discrimination and retaliation and stated that he had filed a charge of discrimination with the Louisiana Commission on Human Rights.[13] A February 27, 2008 email from Hardy's

---

[7] R. Doc. No. 3, pp. 2-3.

[8] *Id*. at p. 3.

[9] *Id.* at p. 5.

[10] R. Doc. No. 32, p. 18.

[11] *Id.*

[12] R. Doc. No. 30-6, p. 11. Hardy filed an amended charge with the Louisiana Commission on Human Rights on May 2, 2008. R. Doc. No. 30-6, p. 12.

[13] R. Doc. No. 32, p. 18; R. Doc. No. 30-4, p. 59.

supervisor, Tammy Little ("Little"), to Karst discusses terminating Hardy.[14] Two emails from Karst, dated March 27, 2008 and March 28, 2008, similarly discuss Hardy's termination.[15] On April 3, 2008, Shell terminated Hardy for his purported poor job performance.[16]

On March 31, 2009, plaintiff filed the above-captioned lawsuit pursuant to the federal Age Discrimination in Employment Act, 29 U.S.C. 621, et seq., Louisiana's Anti-Discrimination Law, La. R.S. 23:332, Louisiana's Whistleblower Protection Law, La. R.S. 23:967, and Louisiana's Environmental Whistleblower Protection Law, La. R.S. 30:2027. In his complaint, Hardy claims that he was fired on the basis of age discrimination, in retaliation for inquiries he made regarding age discrimination, and in retaliation for recommendations he made regarding compliance with environmental standards.[17]

On January 15, 2010, Shell filed a motion for summary judgment.[18] Shell contends that Hardy was terminated for a legitimate, non-discriminatory reason, namely, his poor job

---

[14]*Id.*

[15]*See* R. Doc. No. 32-4, pp. 5-8. Defendant does not object to the authenticity of these emails. *See* Minute Entry dated February 26, 2010.

[16]R. Doc. No. 4 at p. 7.

[17]*See* R. Doc. No. 1.

[18]In its motion for summary judgment, Shell does not address Hardy's claims pursuant to Louisiana's Anti-Discrimination Law ("LAEDL)", La. R.S. 23:332. However, LAEDL is substantively similar to the ADEA and federal and state courts routinely follow cases interpreting the ADEA when evaluating claims brought under the LAEDL, recognizing the same burden of proof and defenses. *See Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 710 (5th Cir. 2005)(citing *Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 818 (5th Cir. 1990); *Montgomery v. Lobman, Carnahan, Batt & Angelle*, 729 So.2d 1075, 1077 (La. App. 4 Cir. 1999)). Because of the similarity between the federal and state law approaches to such claims, the Court finds no reason to conduct a second inquiry into plaintiff's claims pursuant to Louisiana law.

performance.[19] Shell states there is no evidence, aside from timing, to suggest that the defendant's actions were fueled by a retaliatory motive.[20] Shell asserts that the defendant never engaged in conduct that qualifies as a protected activity under Louisiana's whistleblower laws.[21]

*LAW AND ANALYSIS*

I.   **STANDARDS OF LAW**

*A. Summary Judgment*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party must carry this burden as to each essential element on which it

---

[19]R. Doc. No. 30, p. 2.

[20]*Id.*

[21]*Id.*

4

bears the burden of proof. *Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## B. ADEA Claim

The Age Discrimination in Employment Act ("ADEA") authorizes federal employees to bring claims for discrimination based on age. ADEA of 1978 § 15, 29 U.S.C. § 633a (2006); *Boehms v. Crowell*, 139 F.3d 452, 462 (5th Cir.1998). The ADEA makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." ADEA § 4(a)(1), 29 U .S.C. § 623(a)(1).

An ADEA claim may be brought either under a disparate-treatment or a disparate-impact theory of recovery. *Page v. U.S. Indus., Inc*., 726 F.2d 1038, 1045 (5th Cir. 1984) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335-36, 97 S. Ct. 1843, 1854, 52 L. Ed.2d 396 (1977)); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609-10, 113 S. Ct. 1701, 1706, 123 L. Ed.2d

5

338 (1993) ("The disparate treatment theory is of course available under the ADEA, as the language of that statute makes clear."). A disparate-treatment claim is one in which the employer treats some employees less favorably based upon one of the protected traits, i.e., those practices motivated by discriminatory intent, while disparate-impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another," i.e., those practices that have a discriminatory consequence. *Int'l Bhd. of Teamsters*, 431 U.S. at 335 n. 15, 97 S. Ct. at 1854 n. 15; *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S. Ct. 849, 854, 28 L. Ed.2d 158 (1971).

The complainant in an ADEA disparate-treatment claim "must carry the initial burden . . . of establishing a prima facie case of . . . discrimination" by a preponderance of the evidence. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed.2d 668 (1973). In order to establish a prima facie case of disparate-treatment discrimination based upon age, the complainant must show that: (1) he was at least forty years of age,[22] (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007).

Once the complainant has met this initial burden, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the employment decision. *Burdine*, 450 U.S. at

---

[22]"The prohibitions in [the ADEA] shall be limited to individuals who are at least 40 years of age." ADEA § 12, 29 U.S.C. § 631.

253, 101 S. Ct. at 1093. The burden is one of production and not persuasion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed.2d 105 (2000). It cannot, therefore, involve a credibility assessment. *Id.* If the defendant carries this burden, the burden shifts back to the complainant to prove that the reasons given for the employment decision were merely a pretext for discrimination. *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093.

In order for a complainant to avoid summary judgment, he "must present evidence that both (1) rebuts the employer's non-discriminatory reason, and (2) creates an inference that [the protected trait] was a determinative factor in the challenged employment decision." *Ross v. Univ. of Tex.*, 139 F.3d 521, 525 (5th Cir. 1998). Proof of the employer's discriminatory intent is a critical requirement. *Hazen Paper*, 507 U.S. at 609-10, 113 S. Ct. at 1705-06 ("In a disparate treatment case, liability depends on whether the protected trait . . . actually motivated the employer's decision."); *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 292 F.3d 221, 225 & n. 6 (5th Cir. 2002).

Situations in which an adverse employment action has been taken for both discriminatory and nondiscriminatory reasons are also unlawful employment practices within the meaning of the ADEA. *Rachid v. Jack in the Box, Inc*., 376 F.3d 305, 310-11 (5th Cir. 2004) (holding that the mixed-motive framework is applicable in ADEA claims). Accordingly, if the complainant cannot prove that discrimination is the sole reason for an adverse employment action, but contends that discrimination was a motivating factor for the action, a mixed-motive test is applied. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). This test allows the complainant to rebut an employer's articulated reason for taking the employment

7

action by either showing pretext, as discussed above, or by showing "that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 333 (5th Cir. 2005).

*C. Retaliation*

Title VII makes it unlawful for an employer to deprive any individual of employment opportunities, to adversely affect an employee's status, to refuse to hire, or "otherwise to discriminate with respect to [an employee's] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[23] FN28 Civil Rights Act of 1964, tit. VII, § 704(a), 42 U.S.C. § 2000e-2(a) (2006). It is an unlawful employment practice for an employer to retaliate against any employee "because he has opposed any practice made an unlawful employment practice by [Title VII]." Civil Rights Act § 704(a), 42 U.S.C. § 2000e-3(a); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007). Similarly, the ADEA provides:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment ... because such individual, member or applicant for membership has opposed any practice made unlawful by [the ADEA], or because such individual member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA].

---

[23]Congress brought federal employees within the ambit of Title VII, as is the case with the ADEA discussed above. *Chandler v. Roudebush*, 425 U.S. 840, 841, 96 S. Ct. 1949, 1950, 48 L. Ed.2d 416 (1976) ( quoting S. Rep. No. 92-415, at 16 (1971)); see *Loeffler v. Frank*, 486 U.S. 549, 559, 108 S.Ct. 1965, 1971, 100 L.Ed.2d 549 (1988) ( "Congress simultaneously provided federal employees with a cause of action under Title VII and effected a waiver of the Government's immunity from suit.").

8

ADEA § 4(d), 29 U.S.C. § 623(d); *see Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225-26 (5th Cir. 1996).

A retaliation claim requires plaintiff to make a prima facie showing that: (1) plaintiff engaged in a statutorily protected activity, (2) an adverse employment action occurred, and (3) there is a causal link between the protected activity and the adverse employment action. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 n. 3 (5th Cir. 2007); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004); *see Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir.1994) (outlining the prima facie retaliation case in ADEA cases, which is the same as in Title VII cases).

"The establishment of a prima facie case gives rise to an inference of retaliation. This inference, in turn, shifts the burden of proof to the defendant, who must then articulate a legitimate non-discriminatory reason for the challenged employment action." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)(citing *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 41 (5th Cir.1992)). Once the defendant has asserted such a reason, the inference created by the plaintiff's establishing a prima facie case is dropped from the case. *Id.* At this point, summary judgment is appropriate unless the plaintiff can show that the defendant's rationale is pretextual. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 801-803, 93 S. Ct. 1817). The ultimate determination in a retaliation case is whether the plaintiff's protected conduct was a but-for cause of the termination. *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1994).

**II. DISCUSSION**

*A. Plaintiff's Age Discrimination Claims*

The initial consideration is whether plaintiff can make a prima facie case of age discrimination. First, as a person over the age of forty, plaintiff is a member of a protected class. Second, plaintiff has presented evidence that he was qualified for the position he held at Shell.[24] Third, plaintiff suffered an adverse employment action when Shell fired him on April 3, 2008.

In order to meet the fourth prong of his prima facie case, Hardy must show that he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. Because Shell did not hire anyone to fill Hardy's former position after he was terminated, Hardy cannot show that he was replaced by someone outside the protected class or by someone younger.[25] Therefore, in order to meet the fourth prong, Hardy must show that he was otherwise discharged because of his age.

### i. Disparate Treatment

Hardy alleges that similarly situated, younger employees were treated more favorably than he was. "[E]vidence of disparate treatment may . . . logically suggest a discriminatory motive for purposes of establishing a prima facie case of age discrimination [under the ADEA]." *Machinchick v. P.B. Power, Inc.*, 398 F.3d 345, 353, n. 26 (5th Cir. 2005). "In disparate treatment cases, the plaintiff must show 'nearly identical' circumstances for employees to be

---

[24] Hardy states that he has over thirty years of experience in the field of industrial engineering and has earned a master's degree in chemistry. R. Doc. No. 4, p. 1.

[25] Shell states that it has not hired anyone to fill Hardy's former position as an analyzer specialist and, instead, another Shell employee has assumed Hardy's duties in addition to his own. When a plaintiff has been terminated and his job duties are reassigned to existing employees who perform plaintiff's duties in addition to continuing to perform their previous duties, the employee has not been replaced for purposes of establishing his prima facie case. *See Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992)("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement"). Plaintiff does not dispute that he was not replaced. R. Doc. No. 32, p. 5.

considered similarly situated." *Berquist*, 500 F.3d at 353 (finding that a plaintiff who performed credit review work was not similarly situated to younger employees who also performed credit review work but who worked in a different group and for a different supervisor)(internal citations omitted); *Gilbert v. Brookshires Grocery, Co.*, 2009 WL 4666592 at *1 (5th Cir. Dec. 8, 2009)(finding that plaintiff was not similarly situated to another employee where plaintiff presented no evidence that the other employee's "position, duties, qualifications, or pay rate were similar" to his). Requisite "nearly identical" circumstances include the performance or misconduct issues that the employer asserts as the basis for the challenged adverse employment action. *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000).

> As the Fifth Circuit explained in *Lee v. Kansas City S. Ry. Co.*:
>
> [E]mployees . . . who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

574 F.3d 253, 259-60 (5th Cir. 2009) (internal citations omitted).

Hardy contends that two younger Shell employees, Vance Grieshop ("Grieshop") and

Bill Green ("Green"), were similarly situated.[26] Hardy, Grieshop, and Green each worked in the technology department. Hardy worked as a analyzer specialist,[27] whereas Grieshop and Green were process engineers. All three individuals were supervised by Tammy Little, although Hardy had a different first-line manager than Grieshop and Green.[28] Shell designated Hardy, Grieshop, and Green as Grade 3 level employees and Shell routinely compared the performance of Grade 3 employees to one another in internal performance reviews.[29] Plaintiff has not provided evidence to show that his position, duties, and responsibilities were similar to those of Grieshop and Green. The facts that Grieshop and Green had different jobs, worked in a different group within the technology department, and had a different first-line manager than Hardy suggest that they are not similarly situated.

Most importantly, Hardy cannot show that either Green or Grieshop received similarly

---

[26] At the time of Hardy's termination, Hardy was 59 years old, Green was 48 years old, and Grieshop was 45 years old. R. Doc. No. 32, p. 5.

[27] According to Hardy's deposition, as an analyzer specialist, Hardy oversaw the plant's analyzers, which are instruments that analyze the composition of fluids and gases flowing through equipment in production units. Hardy's responsibilities included providing technical assurance for the analyzers, supplying specifications for the replacement of analyzers, and providing technical expertise to assist workers at the plant using the analyzers. R. Doc. No. 30, Ex. A, pp. 65-70.

[28] According to Hardy's deposition, his position as an analyzer specialist was originally located within the control systems engineering group. However, after a management reorganization in late 2004 or early 2005, the control systems engineering group was folded into the technology department. The technology department was comprised of several sub-groups including control systems engineering, project process engineering, process chemistry, and pressure equipment and inspections. Each group had a manager who reported to the head of the technology department. R. Doc. No. 30, Ex. A, pp. 125-34.

[29] Shell's job classification system ranks employees by grade levels. A lower job grade number signifies a higher level position. When Hardy was hired in 1989 his job was classified as Grade 4 and he was promoted to a Grade 3 job in 1998. *Id.* at pp. 70, 113-14.

negative performance reviews and ratings.[30] Hardy presents no evidence regarding the performance reviews and ratings of Grieshop and Green. On the other hand, Shell has presented evidence to show that, in contrast to Hardy, Grieshop received high performance ratings.[31] Therefore, the Court finds that Green and Grieshop are not similarly situated to the plaintiff. Because the plaintiff cannot identify any similarly situated employees, he cannot show disparate treatment.

*ii. Allegations of Discrimination Against Other Shell Employees*

Plaintiff claims that Shell discriminated against other employees over the age of 50. Specifically, plaintiff argues (1) that Shell took adverse employment action against Grade 5 employees who were all over the age of 50 and (2) that Shell discriminated against Trevor Taylor, an employee over the age of 50.

"A 'pattern or practice' of discrimination does not consist of 'isolated or sporadic discriminatory acts by the employer.'" *Wyvill*, 212 F.3d at 302 (quoting *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 875, 104 S. Ct. 2794, 2799, 81 L. Ed. 718 (1984). "[I]t must be established by a preponderance of the evidence that '[the impermissible discrimination

---

[30]Shell has provided evidence that Hardy's performance evaluations from 2004-2007 advised him of several areas which needed improvement, including timeliness, communication, proactive thinking, and visibility. *See, e.g.*, R. Doc. No. 30-4, pp. 41, 46, 48-49, 55. In addition, Shell states that it assigns each employee an Individual Performance Factor ("IFP") on a scale from 0.0 to 1.5. An IFP of 0.8 represents "an employee who is fulfilling the minimum expectations for his job, but no more. An IFP of 0.7 or lower generally reflects an employee who is performing below average." R. Doc. No. 30, p. 4. Hardy's IFP for 2004, 2005 and 2006 was 0.7 and his IFP for 2007 was 0.2. R. Doc. No. 30-6, p. 2, ¶ 16.

[31]According to Shell, Grieshop's IFP was above 1.0, R. Doc. No. 30, p. 13, and Little stated in her deposition that Grieshop had "a history of delivering strong results." R. Doc. No. 30-5, p. 5.

was the company's standard operating procedure - the regular rather than the unusual practice.'" *Id.* "Anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff." *Wyvill*, 212 F.3d at 302. If the other employees were not similarly situated, testimony regarding their experiences "cannot be probative of whether age was a factor in the plaintiff's discharge." *Id.*

In his deposition, Hardy testifies that while he was employed by Shell, Shell froze the benefits of Grade 5 employees and reduced these employees to the Grade 6 level.[32] Hardy stated that he believed that these actions were "age related" because "all the individuals that were in that group were age 50 or older."[33] Hardy also testified at his deposition that another employee, Trevor Taylor, experienced "the same sort of pressure and harassment from the immediate supervisor and the supervisor above that."[34] Hardy stated that he believed "there was an effort to eliminate as many older workers as possible from the plant."[35] Hardy has not shown that the Grade 5 employees or Trevor Taylor were similarly situated. Accordingly, anecdotal evidence as to these employees' experiences is not probative of whether Shell discriminated against Hardy because of his age.

*iii. Comment about Hardy's Retirement*

Hardy also claims that an email sent on August 29, 2007, discussing plaintiff's poor job

---

[32]R. Doc. No. 32-1, p. 4.

[33]*Id.*

[34]*Id.* at p. 7.

[35]*Id.*

14

performance and asking, "Is Bill [Hardy] retirement eligible?"[36] amounts to evidence of age discrimination. "In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." *EEOC v. Tex. Instruments, Inc.* 100 F.3d 1173, 1181 (5th Cir. 1996). For a comment in the workplace to provide sufficient evidence of discrimination, it must: (1) relate to the plaintiff's protected class; (2) occur proximate in time to the adverse employment decision; (3) be made by an individual with authority over the employment decision; (4) and relate to the employment decision. *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999).

The Court does not find that the question posed in the August 29, 2007 email is "direct and unambiguous" evidence of discrimination. In *Simoneaux v. New York Life Ins. Co.*, the Fifth Circuit held that a supervisor's inquiry as to a plaintiff's age and retirement plans was not direct and unambiguous evidence that the plaintiff's age was a factor in the plaintiff's termination. 54 Fed. Appx. 406, 2002 WL 31688900 at * 3 (5th Cir. Oct. 29, 2002). The court held that "these comments prove nothing more than an interest in [plaintiff's] future plans" and, alone, were not sufficient to show that plaintiff was terminated because of his age. *Id.* Plaintiff has not shown, or even argued, that this comment was made by an individual with authority over his employment. Such statement is not sufficient, by itself or combined with plaintiff's other evidence, to support an inference of discriminatory intent.

*iv. Uncalled Witness Rule*

---

[36]R. Doc. No. 32-3, Ex. 7.

Last, Hardy asks the Court to apply the uncalled witness rule and presume that because Shell did not produce a statement from Karst, her testimony would likely be unfavorable. The uncalled witness rule provides that "'if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.'" *Herbert v. Wal-Mart Stores, Inc.*, 911 F.2d 1044, 1047 (5th Cir. 1990)(quoting *Graves v. United States,* 150 U.S. 118, 14 S. Ct. 40, 37 L. Ed. 1021 (1893)). Although in *Herbert* the Fifth Circuit opined that the rule was archaic and should have "no place in federal trials conducted under the Federal Rules of Evidence and the Federal Rules of Civil Procedure," the court observed that it was bound by precedent and, as such, the rule still applied in the Fifth Circuit. 911 F.2d at 1047. The Court observes that the uncalled witness rule creates only an inference, rather than a presumption, as suggested by plaintiff. *Id.*

Such an inference is not appropriate in this case. The uncalled witness rule does not apply where the witness in question is equally available to both parties. *See Herbert*, 911 F.2d at 1048. Karst is no longer employed by Shell. Hardy could have deposed Karst or otherwise attempted to secure an affidavit from her.

*v. Defendant's Legitimate, Non-Discriminatory Explanation*

Even assuming, *arguendo*, that plaintiff was able to demonstrate a prima facie case, the defendant has met its burden by providing evidence that Hardy was fired due to his poor job performance history.[37] Because the Court does not engage in credibility determinations at this

---

[37]Hardy's job performance reviews from 2004-2007 urge improvement in several areas. *See* R. Doc. No. 30-4, pp. 39-59. A September 13, 2007 written memorandum from Karst to Hardy suggests that Hardy seriously needs to improve his communication, timeliness, and

16

stage, the Court acknowledges that defendant has met its burden of production.

The burden then shifts back to the plaintiff to show pretext. For the reasons stated above, the Court finds that the plaintiff has not demonstrated that the defendant's proffered reason for Hardy's termination was pretextual and that he was discharged on the basis of his age.

### *B. Plaintiff's Retaliation Claim*

Hardy claims that he engaged in protected activities by complaining of discrimination to Shell management on two occasions and by filing a charge of discrimination with the Louisiana Commission on Human Rights on the grounds of age discrimination and retaliation. Filing a charge of discrimination and reporting discriminatory practices to a supervisor are protected activities under the ADEA. *See Fanning v. Met. Transit Auth. of Harris County, Tex.*, 141 Fed. Appx. 311, 314 (5th Cir. 2005). It is also undisputed that plaintiff suffered an adverse employment action when he was fired.

With respect to the third prong of the factors set forth in *Jenkins*, 487 F.3d 309, Hardy argues that there is a causal connection between his filing of the EEOC charge and Shell's decision to terminate him. Hardy contends that on April 3, 2007, he submitted a written complaint to Karst complaining that he was constantly being compared to younger employees and subjected to harassment and a hostile work environment.[38] Hardy states that Karst referred

---

leadership. *Id.* at p. 66. In an affidavit, Jennifer Trimble, a former human resources representative at Shell, states that she recommended that Hardy be terminated because of "the previous discipline issued to Mr. Hardy and his continued failure to improve his performance." R. Doc. No. 30-6, p. 6. Trimble reports, "I did not consider Mr. Hardy's age in making my recommendation." *Id.*

[38]R. Doc. No. 32, p. 18.

17

his complaint to Shell's human resources department.[39]

As stated previously, on February 8, 2008, Hardy filed a charge of discrimination with the Louisiana Commission on Human Rights on the grounds of age discrimination and retaliation.[40] On February 26, 2008, in a written response to his job performance review, Hardy complained of age discrimination and retaliation and stated that had filed a charge of discrimination with the Louisiana Commission on Human Rights.[41] A February 27, 2008 email from Little to Karst discusses terminating Hardy.[42] Two emails from Karst to Little and Trimble, dated March 27, 2008 and March 28, 2008, also discuss Hardy's termination.[43] Hardy was fired on April 3, 2008.

"Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. GSA*, 110 F.3d 1180, 1188 (5th Cir. 1997); *see also Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)(noting that a time lapse of up to four months is evidence of a prima facie showing of a causal connection). The close timing between plaintiff's protected activities and Shell's decision to terminate him enables plaintiff to demonstrate a prima facie case of retaliation.

The defendant has responded with a legitimate, non-discriminatory reason for plaintiff's

---

[39]*Id.*

[40]R. Doc. No. 30-6, p. 11.

[41]R. Doc. No. 32, p. 18; R. Doc. No. 30-4, p. 59.

[42]*Id.*

[43]*See* R. Doc. No. 32-4, pp. 5-8. Defendant does not object to the authenticity of these emails. *See* Minute Entry dated February 26, 2010.

termination, namely that Shell terminated plaintiff's employment based on his poor job performance. However, the Fifth Circuit has held that "where there is a close timing between an employee's protected activity and an adverse employment action, the employer must offer a legitimate, nondiscriminatory reason that explains both the adverse action *and the timing*." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999)(emphasis in original)(internal citations omitted). Shell has not provided an explanation for the close timing between the plaintiff's protected activity and the employer's adverse employment action. Furthermore, the Court finds that are genuine issues of material fact regarding the close timing of these events. Summary judgment on plaintiff's retaliation claims is not appropriate at this stage.

## C. Plaintiff's Whistleblower Claims

Shell contends that the plaintiff's claims pursuant to Louisiana's Whistleblower Protection Law, La. R.S. 23:967 and Louisiana's Environmental Whistleblower Protection Law, La. R.S. 30:2027, should be dismissed because the plaintiff has presented no evidence in support of such claims.[44] The plaintiff does not oppose this argument.[45] Accordingly, the defendant's motion for summary judgment on plaintiff's claims pursuant to these statutes is granted.

## *CONCLUSION*

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** to the extent that plaintiffs claims for age discrimination under the ADEA and LADL and plaintiff's claims pursuant to Louisiana's Whistleblower Protection Law, La. R.S. 23:967 and Louisiana's Environmental Whistleblower Protection Law, La. R.S. 30:2027 are **DISMISSED WITH**

---

[44] R. Doc. No. 30, pp. 22-23.

[45] *See* R. Doc. No. 32.

**PREJUDICE.** The defendant's motion for summary judgment is **DENIED** with respect to plaintiff's claims for retaliation pursuant to the ADEA and LADL.

New Orleans, Louisiana, February 26, 2010.

                                          **LANCE M. AFRICK**
                               **UNITED STATES DISTRICT JUDGE**