UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM HARDY** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-3189** |
| **SHELL CHEMICAL COMPANY AND SHELL CHEMICAL LP** | **SECTION I** |

## ORDER

The defendant, Shell Chemical LP ("Shell"),[1] has filed a second motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] The plaintiff, William Hardy ("Hardy"), has filed an opposition.[3] For the following reasons, the motion is **GRANTED.**

### *BACKGROUND*

The facts of this case are set forth in the Court's previous order.[4] In that order, the Court granted defendant's motion for summary judgment in part and dismissed plaintiff's claims for age discrimination pursuant to the federal Age Discrimination in Employment Act, 29 U.S.C. 621, et seq., ("ADEA") and Louisiana's Anti-Discrimination Law, La. R.S. 23:332, ("ADEA"). This Court also dismissed plaintiff's claims under Louisiana's Whistleblower Protection Law, La. R.S. 23:967 and Louisiana's Environmental Whistleblower Protection Law, La. R.S. 30:2027. The Court denied the motion for summary judgment with respect to plaintiff's claims

---

[1] The plaintiff's claims against Shell Oil Company were dismissed, upon joint stipulation by the parties, on October 20, 2009. *See* R. Doc. No. 17.

[2] R. Doc. No. 62.

[3] R. Doc. No. 64.

[4] R. Doc. No. 42.

for retaliation pursuant to the ADEA. As the Court explained, although defendant provided a legitimate nondiscriminatory reason for Hardy's termination, defendant failed to offer an explanation for the timing of the termination. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999) ("[W]here there is a close timing between an employee's protected activity and an adverse employment action, the employer must offer a legitimate, nondiscriminatory reason that explains both the adverse action *and the timing*.") (emphasis in original).

On April 7, 2010, the Court continued the trial date in the above captioned case due to the Court's trial docket and permitted the defendant to file a second motion for summary judgment.[5] Defendant filed such motion on April 15, 2010, seeking summary judgment with respect to plaintiff's remaining claims.[6]

The facts relevant to the instant motion are as follows. On April 3, 2007, Hardy submitted a written complaint to his manager, Suzanne Karst ("Karst"), complaining that he was being compared to younger employees and complaining of an "accusatory and hostile work atmosphere."[7] Hardy states that Karst referred this complaint to Shell's human resources

---

[5]R. Doc. No. 60.

[6]R. Doc. No. 62. In its second motion for summary judgment, Shell does not address Hardy's retaliation claim pursuant to Louisiana's Anti-Discrimination Law ("LAEDL"), La. R.S. 23:332. However, LAEDL is substantively similar to the ADEA and federal and state courts routinely follow cases interpreting the ADEA when evaluating claims brought under the LAEDL, recognizing the same burden of proof and defenses. *See Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 710 (5th Cir. 2005)(citing *Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 818 (5th Cir. 1990); *Montgomery v. Lobman, Carnahan, Batt & Angelle*, 729 So.2d 1075, 1077 (La. App. 4 Cir. 1999)). Because of the similarity between the federal and state law approaches to such claims, the Court finds no reason to conduct a second inquiry into plaintiff's claim pursuant to Louisiana law.

[7]R. Doc. No. 32-3, p. 9.

department.[8]

On February 8, 2008, Hardy filed a charge of discrimination with the Louisiana Commission on Human Rights ("LCHR") on the grounds of age discrimination and retaliation.[9] On February 26, 2008, in a written response to his job performance review, Hardy complained of age discrimination and retaliation and stated that he had filed a charge of discrimination with the LCHR.[10] A February 27, 2008 email from Hardy's supervisor, Tammy Little ("Little"), to Karst discusses terminating Hardy.[11] Two emails from Karst, dated March 27, 2008 and March 28, 2008, similarly discuss Hardy's termination.[12] On April 3, 2008, Shell terminated Hardy for his purported poor job performance.[13]

*LAW AND ANALYSIS*

**I. STANDARDS OF LAW**

*A. Summary Judgment*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those

---

[8] R. Doc. No. 62-2, p. 2.

[9] R. Doc. No. 30-5, p. 11. Hardy filed an amended charge with the LCHR on May 2, 2008. R. Doc. No. 30-5, p. 12.

[10] R. Doc. No. 30-3, p. 59.

[11] R. Doc. No. 32-4, p. 5.

[12] *See* R. Doc. No. 62-2, pp. 10-15.

[13] *See* R. Doc. No. 1, p. 7; R. Doc. No. 4 at p. 7.

portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof. *Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

### B. Retaliation

The ADEA provides in pertinent part:

4

> It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by [the ADEA], or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA].

29 U.S.C. § 623(d); *see Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225-26 (5th Cir. 1996). To establish a prima facie case of retaliation under the ADEA, plaintiff must show: (1) that he engaged in a statutorily protected activity, (2) that an adverse employment action occurred, and (3) that there is a causal link between the protected activity and the adverse employment action. *Holt*, 89 F.3d at 1225-26; *Tratree v. BP North American Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008).

"The establishment of a *prima facie* case gives rise to an inference of retaliation. This inference, in turn, shifts the burden of proof to the defendant, who must then articulate a legitimate non-discriminatory reason for the challenged employment action." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999)(citing *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 41 (5th Cir.1992)). Once the defendant has asserted such a reason, the inference created by the plaintiff's establishing a prima facie case is dropped from the case. *Id.* At this point, summary judgment is appropriate unless the plaintiff can show that the defendant's rationale is pretextual. *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801-803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The ultimate determination in a retaliation case is whether the plaintiff's protected conduct was a but-for cause of the termination. *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1994).

**II.   DISCUSSION**

*Plaintiff's Prima Facie Case*

5

Hardy claims that he engaged in protected activities by complaining of discrimination to Shell management on two occasions and by filing a charge of discrimination with the LCHR on the grounds of age discrimination and retaliation.[14] Filing a charge of discrimination and reporting discriminatory practices to a supervisor are protected activities under the ADEA. *See Fanning v. Met. Transit Auth. of Harris Cnty, Tex.*, 141 F. App'x 311, 314 (5th Cir. 2005); *see also Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 915 (5th Cir. 2008)(Even "[a]n informal complaint to a supervisor regarding an unlawful employment practice" may constitute a protected activity.). It is also undisputed that plaintiff suffered an adverse employment action when he was fired.

With respect to the third prong of the factors set forth in *Holt*, 89 F.3d at 1225-26, Hardy argues that there is a causal connection between his filing of the LCHR charge and Shell's decision to terminate him. Factors relevant with respect to whether a causal link exists between a protected activity and an adverse employment action include (1) the plaintiff's past disciplinary record; (2) whether the employer followed its typical policy and procedures in terminating the plaintiff; and (3) the temporal proximity between the plaintiff's conduct and the termination. *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994); *see also Smith v. Xerox Corp.*, 2010 WL 1141674 at * 4 (5th Cir. Mar. 24, 2010) (same). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal

---

[14]As described above, on April 3, 2007, Hardy submitted a written memoranda to Karst stating that "[t]he perception of my performance relative to younger colleagues has been mentioned" and complaining that "the accusatory and hostile work atmosphere that I have experienced has not improved the resolution of factual disputes rather it has only served to discredit my reputation and aggravate certain health issues." R. Doc. No. 32-3, p. 9. Karst referred such complaint to Shell's human resources department. R. Doc. No. 62-2, p. 2. On February 8, 2008, Hardy filed a charge of discrimination with the LCHR on the grounds of age discrimination and retaliation. R. Doc. No. 30-5, p. 11. On February 26, 2008, in a written response to his job performance review, Hardy complained of age discrimination and retaliation and stated that he had filed a charge of discrimination with the LCHR. R. Doc. No. 30-3, p. 59.

connection' required to make out a *prima facie* case of retaliation." *Swanson v. GSA*, 110 F.3d 1180, 1188 (5th Cir. 1997); *see also Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)(noting that a time lapse of up to four months is evidence of a prima facie showing of a causal connection).

As stated previously, on February 8, 2008, Hardy filed a charge of discrimination with the LCHR on the grounds of age discrimination and retaliation.[15] On February 26, 2008, in a written response to his job performance review, Hardy complained of age discrimination and retaliation and stated that had filed a charge of discrimination with the LCHR.[16] A February 27, 2008 email from Little to Karst discusses terminating Hardy.[17] Two emails from Karst to Little and Jennifer Trimble ("Trimble") a Shell human resources representative, dated March 27, 2008 and March 28, 2008, also discuss Hardy's termination.[18] Hardy was fired on April 3, 2008. The close timing between plaintiff's protected activities and Shell's decision to terminate him enables plaintiff to demonstrate a prima facie case of retaliation.

*Defendant's Legitimate, Nondiscriminatory Explanation*

"[W]here there is a close timing between an employee's protected activity and an adverse employment action, the employer must offer a legitimate, nondiscriminatory reason that explains both the adverse action *and the timing*." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999)(emphasis in original)(internal citations omitted). The defendant has

---

[15] R. Doc. No. 30-5, p. 11.

[16] R. Doc. No. 30-3, p. 59.

[17] R. Doc. No. 32-4, p. 5.

[18] *See* R. Doc. No. 62-2, pp. 10-15.

responded with a legitimate, non-discriminatory reason for plaintiff's termination and the timing of his termination, namely that Shell terminated plaintiff's employment based on Hardy's continued poor job performance. Shell asserts that it "decided to terminate Hardy's employment a full year after it began trying to rehabilitate his poor performance and after two specific incidents in March of 2008."[19]

Shell has provided evidence that Hardy's performance evaluations from 2004-2007 advised him of several areas which needed improvement, including timeliness, communication, proactive thinking, and visibility.[20] Trimble attested in her affidavit that Shell assigns each employee an Individual Performance Factor ("IFP") on a scale of 0.0 to 1.5.[21] According to Trimble's affidavit, an IFP of 0.8 reflects "an employee who is fulfilling the minimum expectations for their job, but no more. An IFP of 0.7 or lower generally reflects an employee who is performing below average."[22] Hardy's IFP for 2004, 2005 and 2006 was 0.7 and his IFP for 2007 was 0.2.[23]

Shell avers that it placed Hardy on a performance improvement plan on March 21, 2007, before Hardy conducted the first of his protected activities. Shell further avers that it initiated formal discipline against Hardy in the form of a written reminder on September 13, 2007 and a "decision making leave" on October 4, 2007.[24] The September 13, 2007 written reminder detailed

---

[19] R. Doc. No. 62-1, p. 4.

[20] *See, e.g.*, R. Doc. No. 30-3, pp. 41, 46, 48-49, 55.

[21] R. Doc. No. 30-5, pp. 5-6.

[22] *Id.* at p. 6.

[23] *Id.*

[24] *See id.* at, pp. 4-5, 8 -10.

specific performance job areas in which Hardy needed to improve and warned that "[a]ny further incidents or job-related problems could result in further formal corrective action up to and including the termination of your employment."[25]

As stated, on October 4, 2007, Shell placed Hardy on a "decision making leave."[26] An October 5, 2007 letter from Karst to Hardy states that Hardy was placed on the decision making leave because a report Hardy submitted was inadequate and "did not contain details."[27] Trimble's affidavit states that a decision making leave or "DML" is "the third and final level of formal discipline. An employee who receives a DML is suspended for one day with pay and must decide whether to recommit to the company. The DML remains in the employee's personnel file for thirty-six months."[28] Shell initiated these disciplinary actions before Hardy filed his charge of discrimination with the LCHR.

Karst also states in an affidavit that at a March 20, 2008 meeting with Hardy, she requested a "week-by-week summary of his tasks to accomplish over the next two to three weeks" which Hardy failed to provide by the end of that week and that on March 24, 2008, Hardy "submitted an analyzer metrics report which lacked the detail that I expected and had requested."[29] Karst attests that:

> [Such incidents] were further examples of the performance problems I had been addressing with Mr. Hardy for the past year. Because it was apparent to me that

---

[25]*Id.* at p. 8. The written reminder further stated, "[the] purpose of this memo is to document and convey to you the seriousness of the need for enhanced performance from you." *Id.*

[26]R. Doc. No. 62-2, p. 9.

[27]*Id.*

[28]R. Doc. No. 30-5, pp. 4-5.

[29]R. Doc. No. 62-2, p. 5.

9

> Mr. Hardy's performance was not improving despite repeated counseling and
> warnings, I emailed Ms. Trimble on March 27, 2008 requesting that Mr. Hardy's
> employment be terminated. On March 28, I supported this request with a
> document that summarized Mr. Hardy's continued performance deficiencies
> during 2007 and 2008.[30]

Karst attests that she and Trimble met with Hardy on April 3, 2008 and informed him that his employment was terminated.[31] As defendant has shown a legitimate, non-discriminatory reason for Hardy's termination and the timing of such termination, the burden shifts to plaintiff to show that Shells's rationale is pretextual.

*Pretext*

Hardy relies on the close timing between the filing of his charge of discrimination with the LCHR and his termination to show that the reason Shell provided for his termination is a pretext. Although "'[c]lose timing between an employee's protected activity and an adverse action may provide the 'causal connection' necessary to establish a prima facie case of retaliation,' suspicious timing alone is insufficient to establish pretext." *Shannon v. Henderson*, 275 F.3d 42, 2001 WL 1223633 at *4 (5th Cir. 2001) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)); *see also Robertson v. Alltel Info. Serv.*, 373 F.3d 647, 656 (5th Cir. 2004) ("Without more than timing allegations, and based on [the employer's] legitimate, nondiscriminatory reason [for plaintiff's termination] in this case, summary judgment in favor of [the employer] was proper.").

Hardy contends that a statement by Karst in a March 27, 2007 email to Little and Trimble

---

[30]*Id.*; *see also* R. Doc. No. 62-2, pp. 10-15.

[31]R. Doc. No. 62-2, p. 6.

[32] suggests that Karst "told Hardy to cease his complaints of discrimination."[33] Karst's email summarizes her March 20, 2008 meeting with Hardy and states that Karst told Hardy that he still needed to improve his employment. Karst's email states in pertinent part:

> When allowed time to reflect back the message delivered he feels he is being singled out for "this kind of treatment". When I asked what he meant by "this kind of treatment", he feels every effort is being made to find fault with his performance. He said it also seems to be popular for folks to jump on the "bandwagon". When I asked what he meant by that, he mentioned emails from Phil Hamilton in SGS pointing out fault in his performance with respect to the DAS on the CEMS system. I shared that there is no "bandwagon" to jump on as performance discussions are confidential between me, him, Tammy and HR. SGS has no awareness of performance discussions. They only knew he was out for a while and were asked to supplement a few things in his absence. I suggested that he remove the "bandwagon" explanation from his logic and consider SGS analyzer discipline comments at face value.[34]

Hardy argues that the last sentence, "I suggested that he remove the 'bandwagon' explanation from his logic and consider SGS analyzer discipline comments at face value," indicates that Karst warned Hardy not to complain of discrimination.[35] The Court cannot derive the same meaning from such sentence, especially in light of the fact that Hardy never testified at his deposition that Karst told him to cease his complaints of discrimination or that she suggested he drop his charge with the LCHR.

Hardy also submits the responses of anonymous Shell employees in a 2006 company-wide survey rating Shell with respect to various survey categories, contending that such survey

---

[32] *See* R. Doc. No. 62-2, p. 10.

[33] R. Doc. No. 64, p. 5.

[34] R. Doc. No. 62-2, p. 10.

[35] R. Doc. No. 64, p. 5.

11

responses are "warnings from other employees that a protected activity may be harmful."[36]

Even assuming that the Court could consider such a survey as competent summary judgment evidence,[37] a finding this Court will not make, plaintiff's evidence of pretext is still deficient. The survey results are not probative of the issues before this Court as the survey responses are general in nature and the Court cannot discern the basis for those responses.

Hardy argues that Karst was not competent in the field of control systems engineering and "was not competent to evaluate [Hardy's] . . . performance."[38] However, such allegation alone does not show pretext. As the Fifth Circuit explained in *Shackelford*:

> Merely disputing [an employer's] assessment of [plaintiff's] work performance will not necessarily support an inference of pretext. *See Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993) (noting that it is not the defendant's burden to prove that its legitimate non-discriminatory rationale is correct); *Smith v. St. Regis Corp.*, 850 F.Supp. 1296, 1318 (S.D.Miss.1994), aff'd, 48 F.3d 531 (5th Cir.1995) (noting that an honest belief in a non-discriminatory reason for discharge, even if incorrect, is not discrimination) (citing *Wright v. Western Elec. Co., Inc.*, (664 F.2d 959, 964)). The issue is whether [the employer's] perception of [plaintiff's] performance, accurate or not, was the real reason for her termination. Indeed, the ultimate issue on summary judgment is whether [plaintiff] produced evidence which could support a finding that she would not have been fired in the absence of her having engaged in protected conduct. *Long v. Eastfield College*, 88 F.3d 300, 304 n. 4 (5th Cir. 1996) ("ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision") (citing *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir.1985)).

---

[36]R. Doc. No. 64, p. 6. For example, the "Shell Chemicals Norco 2006 Shell People Survey" states that 49 percent of survey respondents answered favorably to the category "I feel free to speak my mind without fear of negative consequences," 48 percent of survey respondents answered favorably to the category "The decisions leaders in my organisation [sic] make concerning employees are fair," 55 percent of survey respondents answered favorably to the category "Has a working environment in which different views and perspectives are valued," and 66 percent of survey respondents answered favorably to the category "Has a working environment that is free from harassment and discrimination." R. Doc. No. 64-2, p. 12.

[37]Hearsay statements are not competent summary judgment evidence. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 510 n. 5 (5th Cir. 2001) (citing *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995)).

[38]R. Doc. No. 64, p. 6.

12

190 F.3d at 408-09. Plaintiff has not presented any evidence, aside from close timing, that supports an inference of pretext.[39] Because timing alone is insufficient to show pretext, summary judgment is appropriate.

## *CONCLUSION*

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** and plaintiff's claims for retaliation pursuant to the ADEA and LADL are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, July 12, 2010.

```
                              LANCE M. AFRICK
                        UNITED STATES DISTRICT JUDGE
```

---

[39]*Smith v. Xerox Corp.*, 2010 WL 1141674 (5th Cir. Mar. 24, 2010), relied upon by Hardy, is factually distinguishable because the plaintiff in *Smith* presented evidence *in addition to timing* which demonstrated that defendant's reasons for plaintiff's termination were pretextual. In addition to other evidence, the plaintiff in *Smith* presented testimony by a human resources manager that her supervisor's reprimands were "suspicious and indicative of retaliatory motivation" and that job reassignment rather than termination would "ordinarily" be considered for an employee with a similar track record to plaintiff. *Id*. at * 5.